IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DAVID MACGREGOR, ET AL., | ) | |
| | ) | Civil No. 2:10-CV-03088 |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FARMERS INSURANCE EXCHANCE | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on plaintiffs' Motion to Allow Notice to Similarly Situated Employees and to Approve Interrogatory to Defendant Seeking the Identity of Similarly Situated Employees pursuant to 29 U.S.C. § 216(b).  For the following reasons, plaintiffs' motion is denied.

## I.  BACKGROUND

On December 3, 2010, plaintiffs David MacGregor, James Cantrell, and Debra Carnahan filed their original complaint against Farmers Insurance Exchange ("FIE") for quantum meruit and violations of the Fair Labor Standards Act ("FLSA").  Chris Fluri filed his Notice of Consent to Opt-In to the lawsuit on January 13, 2011.  On January 31, 2011, FIE filed its first motion to dismiss, and on February 14, 2011, plaintiffs filed an amended complaint.  On March 3, 2011, defendant filed a motion to dismiss the amended complaint, which the court granted as to the quantum meruit cause of action, but denied regarding the FLSA claims.  Plaintiffs filed the present motion for conditional certification on March 4, 2011, but the parties consented to staying the motion until after the court resolved the motion to dismiss.

1

The amended complaint alleges that FIE, an insurance provider, employed plaintiffs as property claims representatives ("PCRs"). Plaintiffs claim that there are at least 25 additional "similarly situated" present and former non-exempt PCRs who "handled claims for damage to customers' homes, investigated claims, considered liability, inspected damaged property, estimated the cost of repair or replacement of damaged property, and negotiated claim settlements" from December 3, 2007, to the present, and whom defendant failed compensate for overtime hours. Pls.' Am. Comp. 5, 3, 11.

Plaintiffs allege: (1) FIE's policies regarding territory assignment often required plaintiffs to work over 40 hours, but FIE's supervisor approval procedures did not allow plaintiffs to receive credit for these hours; (2) FIE automatically deducted 45 minutes every day for lunch, even when plaintiffs worked through lunch; and (3) FIE failed to compensate plaintiffs for training, classes, and the filing of timecards or expense reports, which required plaintiffs to work beyond the 40-hour work week. The complaint alleges that as a result of these policies, plaintiffs and similarly situated employees regularly worked overtime hours without compensation.

## II. DISCUSSION

Named plaintiffs have requested permission to send notice to putative members of the collective action and approval of an interrogatory to defendant seeking the identity of similarly situated employees pursuant to the FLSA, 29 U.S.C. § 216(b). The plaintiffs seek to notify all PCRs who worked for FIE between December 3, 2007 and the present. See Pls.' Mot., Ex. 12.

Under the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and other employees. Section 216(b) of the FLSA states that

> [a]n action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Collective action certification occurs in two stages: the "notice stage" and an optional final stage. See id. "The Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion in appropriate cases to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" Purdham v. Fairfax Cnty. Pub. Schs., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)).

During the "notice stage," which is the subject of the current motion, the court reviews the pleadings and affidavits to determine whether plaintiffs have sufficiently demonstrated that they are "similarly situated" to other putative members in an FLSA action. See Steinberg v. TQ Logistics, Inc., No. 10-2507, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011); Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007). If the court finds that the proposed class members are "similarly situated," the court will conditionally certify the class and permit notice. See Steinberg, 2011 WL 133591, at *1. The second stage of collective action certification occurs after discovery if the defendant moves for decertification. During this stage, the court applies a "heightened fact-specific standard to the 'similarly situated' analysis." Id. at *2.

Plaintiffs must demonstrate that notice is "appropriate." D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 894 (D. Md. 1995) (internal citations omitted). While the requirements on plaintiffs at the "notice stage" are "fairly lenient," Anderson, 488 F.3d at 953, a court's discretion to facilitate notice is not without bounds.

3

> Indeed, courts should not exercise their discretion to facilitate notice unless "[t]he facts and the circumstances of the case illustrate" that a class of "similarly situated" aggrieved employees exists. Hoffmann-La Roche, Inc., 493 U.S. at 170. Accordingly, "[t]he relevant inquiry . . . is . . . whether this is an appropriate case in which to exercise that discretion." Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D. Md. 2000) (citing Hoffmann v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

Purdham, 629 F. Supp. 2d at 547-48.

At the notice stage, plaintiffs must demonstrate "some identifiable factual nexus which binds the named plaintiffs and the potential class members together." Heagney v. Eur. Am. Bank, 122 F.R.D. 125, 127 (4th Cir. 1988); Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008) ("[P]laintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees."). "Mere allegations will not suffice; some factual evidence is necessary." Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).

"In recognizing the ability of lower courts to facilitate notice in 'appropriate cases,' the Supreme Court emphasized the efficiency gained by grouping 'common issues of law and fact arising from the same alleged discriminatory activity' into a single proceeding." Purdham, 629 F. Supp. 2d at 549 (quoting Hoffmann-La Roche, 493 U.S. at 170). A plaintiff should provide at least "modest factual support" to show that class certification is likely to provide more "orderly" and "sensible" case management than separate adjudication. Hoffmann-La Roche, 493 U.S. at 171; see Severton v. Phillips Beverage Co., 137 F.R.D. 264, 266-67 (D. Minn. 1991). If plaintiffs demonstrate that they are sufficiently similar, increased efficiency is likely to result from collective action certification. If individualized determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus notice should not be

4

granted. Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686-87 (D. Md. 2010); England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (finding conditional certification inappropriate where adjudication of a collective action would have required factual inquiries into employment relationships involving different managers at different locations throughout the country, and where the court concluded that a finding of liability at one location would not necessarily lead to a finding of liability at another location). Plaintiffs are similarly situated if they "were victims of a common policy or plan that violated the law." Purdham, 629 F. Supp. 2d at 549 (citing Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 563 (E.D. Va. 2006); see also Marroquin v. Canales, 236 F.R.D. 257, 259-60 (D. Md. 2006); D'anna, 903 F. Supp. at 893 (Putative plaintiffs are "similarly situated [if] they were victims of a single decision, policy, or plan."). Plaintiffs must demonstrate this common policy by a "modest factual showing" for a court to grant notice and conditional certification. Purdham, 629 F. Supp. 2d at 549.

Plaintiffs characterize defendant's alleged "fail[ure] to fully compensate similarly situated employees overtime at a rate of time-and-a-half" as a "common policy or plan that violated the law." Pls.' Mot. 10. This is not a policy or plan, but rather a result, which plaintiffs claim is caused by a conglomeration of defendant's policies and practices. Namely, plaintiffs allege that: 1) defendant required PCRs to obtain pre-approval for overtime from supervisors; 2) these supervisors frequently refused to pre-approve overtime; 3) defendant's manner of assigning work by territories made it difficult for PCRs to accurately predict overtime in order to receive approval and occasionally made it impossible for PCRs to complete the work within 40 hours; 4) supervisors forced plaintiffs to adjust their timecards to decrease the amount of overtime

5

hours on their time cards; and 5) supervisors frequently refused to upwardly adjust the pre-approved hours when plaintiffs worked overtime.  Pls.' Mot. 11, Ex. 1 ¶¶ 4-10; Ex. 2 ¶¶ 3-9; Ex. 3 ¶¶ 4-10, Ex. 4 ¶¶ 4-10.

Plaintiffs admit that FIE "prohibited employees from working 'off the clock.'" Pls.' Mot. 4.  Plaintiffs allegations suggest that had the supervisors approved requested overtime, either before or after it was worked, FIE would have appropriately compensated PCRs for overtime hours.  Thus, each supervisor's actions are essential to establishing any violation of the law.  Requiring supervisor approval for work hours, automatically deducting lunch breaks, and FIE's method of assigning work do not violate the FLSA without more.  See Perez v. Moutaire Farms, Inc., --- F.3d ----, No. 09-1917, 2011 WL 2207110, at *11 (4th Cir. June 7, 2010); Zivali v. AT & T Mobility, LLC, No. 08-10310, 2011 WL 1815391, at *9 n.3 (S.D.N.Y. May 12, 2011); Diaz v. Elecs. Boutique of Am., Inc., No. 04-0840, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005); Enright v. CGH Med. Center, No. 96-50224, 1999 WL 24683, at *6 (N.D. Ill. Jan. 12, 1999).

When "[a]lleged FLSA violations stem[ ] from the enforcement decisions of individual supervisors," without a company-wide policy or plan directing those enforcement decisions, collective treatment is not appropriate.  Adair v. Wisc. Bell, Inc., No. 08-0280, 2008 WL 4224360, at *7 (E.D. Wisc. Sept. 11, 2008) (refusing to certify class where defendant established that its company-wide policies did not cause differences between compensable work and pay); see also Salinas v. O'Reilly Auto., Inc., No. 04-1861, 2005 WL 3783598, at *6 (N.D. Tex. Nov. 17, 2005) (finding that plaintiffs' evidence failed to show a common policy or practice where the evidence only

demonstrated that "a handful of [defendant's] managers . . . committed . . . FLSA violations in a variety of different ways"); <u>Simmons v. T-Mobile USA, Inc.</u>, No. 06-1820, 2007 WL 210008, at *6 (S.D. Tex. Jan. 24, 2007) (finding that supervisors' independent refusal to upwardly amend overtime hours, which violated the written policy of the employer to pay overtime, did not indicate a common policy or plan of the employer sufficient to satisfy the "similarly situated" standard, even when the employer discouraged employees from working overtime); <u>Basco v. Wal-Mart Stores, Inc.</u>, No. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (decertifying a class because "various decisions by different supervisors made on a decentralized employee-by-employee basis" did not demonstrate a "single decision, policy or plan" satisfying the "similarly situated" requirement). Plaintiffs acknowledge that FIE's policy is to compensate all time worked, regardless of pre-approval. <u>See</u> Pls.' Reply 5-6.

Courts have found the potential for an "unwritten policy" which could violate the FLSA sufficient to make plaintiffs "similarly situated" when numerosity and geographic diversity of presented affidavits demonstrate that the supervisors "overtime violations [were]. . . not the product of happenstance or outlier instances of rogue behavior by errant supervisors but were themselves policies (albeit unwritten ones) implemented consistently in a manner . . . on an ongoing basis. <u>Longcrier v. HL-A Co., Inc.</u>, 595 F. Supp. 2d 1218, 1239-40 (S.D. Ala. 2008) (finding 30 affidavits concerning supervisor refusal to approve overtime hours sufficient to suggest an unwritten policy); <u>Hens v. ClientLogic Operating Corp.</u>, No. 05-0381, 2006 WL 2795620, at *4 (W.D.N.Y. Sept. 26, 2006) (finding that 62 declarations by proposed plaintiffs who worked in 7 different facilities in 5 different states demonstrated the potential FLSA violations were not

"isolated" instances, but rather a company-wide policy). The limited allegations in this case do not allow the court to reasonably reach the conclusion that FIE had an "unwritten policy" requiring supervisors to violate the FLSA; rather, even in the light most favorable to plaintiffs, the facts evince isolated supervisor misconduct.[1] If plaintiffs had provided even "modest factual support" of an unwritten policy contradictory to FIE's stated policy to pay employees for overtime, collective treatment might be appropriate, however, no such evidence is before the court.[2] Mancia v. Mayflower Textile Servs. Co., No. 08-0237, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008) (conditionally certifying a class when supervisor told one plaintiff that it was against the company's policy to pay overtime).

While this court recognizes that collective actions under the FLSA are "not subject to the provisions generally associated with class actions under FRCP 23 (such as numerosity, commonality, and typicality), Castillo v. P&R Ent., Inc., 517 F. Supp. 2d 440, 444 (D.D.C. 2007), the Supreme Court's reasoning in a recent Title VII class action, Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), is nonetheless illuminating. In Dukes, the Supreme Court found that the "only corporate policy that the plaintiffs' evidence convincingly establishes is [defendant's] 'policy' of *allowing discretion* by local supervisors over employment matters. On its face, of course, that is just the opposite of a uniform employment practice . . . it is a policy *against having* uniform

---

[1] Affidavits and emails provided by plaintiffs demonstrate that individual supervisors may have threatened PCRs against working overtime, but there is no evidence connecting any FIE policy to these independent actions. See Pls.' Reply, Ex. 13).

[2] Plaintiffs point out that FIE's policy is to pay overtime regardless of supervisor approval of those hours. Pls.' Reply 5. First, this policy demonstrates a common policy to follow the FLSA, not violate it. Second, the payroll method alleged by plaintiffs shows that plaintiffs were paid by the hours reflected on their time cards. Plaintiffs allege that their supervisors failed to allow them to properly record their time cards. While FIE's policy contemplates some additional means of demonstrating to FIE that overtime hours were worked, plaintiffs have failed to show such a procedure to the court or to demonstrate that FIE did not follow this hypothetical alternative payroll policy.

employment practices." 131 S. Ct. at 2554. The court found that leaving such determinations to supervisors did not raise an inference of illegal conduct. Id. This court need not base its decision that plaintiffs have failed to present even a modest factual showing of a common policy or plan on Dukes, as that numerous district courts have reached similar results without the benefit of this clearly reasoned Supreme Court decision. However, if there is not a uniform practice but rather decentralized and independent action by supervisors that is contrary to the company's established policies, individual factual inquiries are likely to predominate and judicial economy will be hindered rather than promoted by certification of a collective action. In the present case, plaintiffs ask to conditionally certify a nationwide class of PCRs who worked for numerous different supervisors throughout the country. The facts presented do not suggest that a suit would involve anything other than inquiries into independent supervisor decisions regarding each individual PCR's requested, approved, and refused hours. Collective action is unlikely to promote orderly and sensible case management based on the present facts; therefore, in the court's discretion, collective treatment is imprudent. See Choimbol., 475 F. Supp. 2d at 563; D'Anna, 903 F. Supp. at 894.

Plaintiffs do not discuss FIE's requirement that PCRs take lunch breaks, the automatic deduction of those breaks from hours worked, or failure to compensate for training and reporting times as a basis for providing notice to putative opt-in plaintiffs. The allegations for the training and reporting policies in the complaint and affidavits, however, appear to be similar to the facts discussed above in that supervisor approval was required for overtime hours on these tasks and certain supervisors refused to approve overtime. The deduction of lunch break time is not an FLSA violation if they were "bona

fide meal periods." 29 C.F.R. § 785.19; see Perez, 2011 WL 2207110, at *11. Furthermore, an automatic pay roll deduction of required lunch breaks is not a per se violation of the FLSA; however, if employees worked over lunch, they must be compensated for that time. See, e.g., Enright, 1999 WL 24683, at *6. In the present case, PCRs worked independently in the field, FIE instructed them to take lunch breaks. An analysis of lunch breaks will require the court, and eventually a jury, to determine whether each individual PCR actually took lunch breaks, their frequency and duration, whether each PCR's supervisor advised the employee how to report worked lunch breaks, whether the employee did in fact report worked lunch breaks, and how many, if any of these worked lunch breaks were compensated. See Dudley v. Tex. Waste Sys., Inc., No. 05-0078, 2005 WL 1140605, at *2 (W.D. Tex. May 16, 2005). The necessity for independent inquiries into each alleged violation makes collective action likely to hinder rather than promote judicial economy.

## III.  CONCLUSION

For the foregoing reasons, the court **DENIES** plaintiffs' motion to allow notice.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**July 22, 2011**
**Charleston, South Carolina**