IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DAVID MACGREGOR, *et al.*, | ) | |
| | ) | No. 2:10-cv-03088-DCN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| FARMERS INSURANCE EXCHANGE, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on defendant's motion for summary judgment. For the reasons stated below, the court denies the motion.

## I. BACKGROUND

### A. Procedural History

On December 3, 2010, named plaintiffs David MacGregor, James Cantrell, and Debra Carnahan filed a purported class action complaint against Farmers Insurance Exchange ("Farmers") for alleged violations of the Fair Labor Standards Act ("FLSA" or "the Act"). The complaint also alleged an alternative quantum meruit claim based on South Carolina common law. The named plaintiffs amended their complaint on February 14, 2011. On March 4, 2011, they moved for conditional certification of a class of all Farmers property claims representatives who have unlawfully been denied overtime pay. Though the named plaintiffs each worked in the Atlanta regional zone the last three years and under the same supervisor for some time, they initially requested certification of a nationwide class. The court denied that motion on July 22, 2011 because the named

plaintiffs failed to allege a common policy or plan materially uniting the proposed nationwide class.

On January 31, 2012, the plaintiffs moved for reconsideration of the court's ruling on conditional certification or, in the alternative, for conditional certification of a narrower class. On April 30, 2012, the court denied the motion for reconsideration, but granted leave to resubmit the motion to renew if the named plaintiffs could outline the parameters of a narrower class. On May 15, 2012, the named plaintiffs moved for conditional certification of a more limited class "including all property claims representatives who worked under the Plaintiffs' supervisory chain headed by Michael Flynn, Defendant's Branch Claims Manager of its Atlanta Zone, during the three years predating the filing of this motion." Pls.' Renewed Mot. for Conditional Certification 1. On July 20, 2012, the court conditionally certified this narrower class.

On March 28, 2013, the court approved the parties' Joint Motion to Approve Notice to Potential Members of Conditionally-Certified Collective Action. On April 24, 2013, plaintiff John Hodges filed notice of his consent to opt in as a plaintiff in this suit.

On December 16, 2013, Farmers moved for summary judgment on all plaintiffs' FLSA claims. Plaintiffs opposed the motion on January 24, 2014. Farmers filed a reply on February 7, 2014. This matter has been fully briefed and the court had the benefit of the parties' oral argument at a hearing held on March 20, 2014. The matter is ripe for the court's review.[1]

---

[1] The parties' briefs do not address plaintiffs' alternative quantum meruit claim. This order likewise does not address that claim.

### B. Factual Background

Because the court must construe all facts in the light most favorable to the non-moving party, these facts are drawn from plaintiffs' brief. MacGregor, Cantrell, Carnahan, and Hodges all used to work as property claims representatives ("PCRs") for Foremost Insurance Company ("Foremost"), a Farmers subsidiary. Because plaintiffs all worked in Foremost's Atlanta zone, they all reported to supervisors who in turn reported to Michael Flynn, the Branch Claims Manager for the Atlanta zone.

As PCRs, plaintiffs handled insurance claims made by Foremost customers, inspected newly-insured properties, and handled appraisals for desk adjusters. The work of a PCR is somewhat unpredictable, as no one can forecast how many claims will be made on any particular day or week. In addition, PCRs are required to do a great deal of driving, as they must physically inspect their customers' newly-insured properties as well as properties for which claims are made.

Farmers required its PCRs to have any overtime hours approved before those hours were worked. Plaintiffs were required to submit their estimated weekly time cards by 9:00 a.m. on Monday morning – before any work had been done. If, during the week, plaintiffs realized that their actual work hours were going to vary from their estimated work hours, they were required to request approval for additional overtime. Farmers did not maintain an official policy regarding how additional overtime requests were evaluated. Farmers' employment materials explain that:

> Normally, all overtime hours must be pre-approved in writing. One hour of overtime per week may be worked without prior approval, but with the supervisor's post-written approval. This circumstance is most likely to occur in situations out of our control, which need to be immediately addressed . . . . Written approval can be made in the form of an e-mail or other written documentation.

> **Does Farmers have to pay an employee who works overtime without approval?**
> Yes. We will compensate employees for all hours worked according to Company policy and applicable state and federal laws. However, such behavior would be considered misconduct and employees would be subject to some form of counseling and or disciplinary action.

Pls.' Opp'n to Mot. for Summ. J. Ex. 10, at 2-3.

Plaintiffs allege that Farmers fostered an atmosphere in which "employees were intimidated into not reporting their actual time worked out of fear of losing their jobs." Pls.' Opp'n 11. Specifically, plaintiffs contend that "although Farmers claims it prohibited employees from working 'off the clock,' Plaintiffs, in order to complete all their assigned work, had to work overtime hours 'off the clock' because supervisors frequently refused to approve Plaintiffs' overtime requests." Id. at 12. Plaintiffs similarly allege that Farmers required them to record a forty-five minute lunch break every day, regardless of whether plaintiffs actually took a lunch break or worked through lunch. Id. Plaintiffs allege that they were routinely undercompensated because Farmers did not pay them for unreported overtime, unapproved overtime, or for work done while employees should have been on required lunch breaks.

## II. STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

Farmers moves for summary judgment, arguing that plaintiffs' FLSA claim fails for two distinct reasons. First, Farmers contends that plaintiffs cannot prove that Farmers "suffered or permitted" their off-the-clock work. Second, Farmers asserts that plaintiffs' FLSA claim would still fail – even if plaintiffs could make out a prima facie claim for relief under the Act – because plaintiffs were all exempt from the Act's overtime requirements pursuant to its administrative exemption.

**A.  The Davis v. Food Lion Test**

The Act states that employers must compensate their employees for a workweek longer than forty hours on the basis of at least one and a half times the employee's regular hourly rate. 29 U.S.C. § 207(a)(1). Where, as here, an employer's records do not reflect the overtime hours that plaintiffs claim to have worked, the employee bears the "burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was

improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id.  In the Fourth Circuit, an employee who seeks to recover on an FLSA uncompensated overtime claim must prove:  (1) that he or she worked overtime hours without compensation, showing the amount and extent of his or her overtime work as a matter of just and reasonable inference; and (2) that his or her employer suffered or permitted the uncompensated overtime work, that is, that the employer had actual or constructive knowledge of the employee's overtime work.  Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986); accord Hawkins v. Proctor Auto Serv. Center, No. 09-cv-01908-RWT, 2010 WL 1346416, at *1 (D. Md. Mar. 30, 2010); In re Food Lion Effective Scheduling Litig., 861 F. Supp. 1263, 1271 (E.D.N.C. 1994).

### 1. Whether Plaintiffs Have Proved the Amount and Extent of Their Overtime Work

Before turning to Farmers' arguments in favor of summary judgment, the court must first determine whether plaintiffs have met their burden of demonstrating the amount and extent of their alleged off-the-clock overtime work as a matter of just and reasonable inference.  Plaintiffs in FLSA overtime cases need not "prove each hour of overtime work with unerring accuracy or certainty."  Pforr v. Food Lion, Inc., 851 F.2d 106, 108 (4th Cir. 1988).  Rather, "a plaintiff under the FLSA need only show the amount and extent of improperly compensated work 'as a matter of just and reasonable inference.'"  Id. (quoting Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113, 1116 (4th Cir. 1985)).

What quantum of evidence satisfies the just and reasonable inference standard is a matter of some debate.  In Randolph v. PowerComm Construction, Inc., --- F. Supp. 2d --

-, 2014 WL 1260722 at *10-11 (D. Md. 2014), the district court found that plaintiffs' sworn declarations – which estimated the average amount of off-the-clock overtime hours worked each week as well as the number of weeks worked – met their burden of showing the amount of overtime worked by a just and reasonable inference. The Randolph court denied the defendant's motion for summary judgment because "[w]hether Plaintiffs have been compensated for every hour of overtime worked remains a subject of dispute." Id. at *11. In McLaughlin v. Murphy, 436 F. Supp. 2d 732, 738 (D. Md. 2005), on the other hand, the district court found that a plaintiff had not met his burden by estimating in an interrogatory response that he worked from 40 to 55 hours per week. See also Lee v. Vance Exec. Protection, Inc., 7 F. App'x 160, 166 (4th Cir. 2001) (affirming summary judgment in favor of employer on an FLSA unrecorded overtime claim because while "[t]here is much general testimony about [uncompensated overtime work done by the plaintiffs], . . . the record is bereft of evidence showing the amount or extent of this extra work").

In this case, Cantrell, Carnahan and MacGregor have each averred that they worked "at least ten overtime hours each week" for which they were not compensated. Cantrell Decl. ¶ 12, Feb. 20, 2011; Carnahan Decl. ¶ 13, Feb. 14, 2011; MacGregor Decl. ¶ 13, Feb. 15, 2011. They stood by these estimates in their depositions.[2] Hodges, the

---

[2] Cantrell testified in deposition that he worked an average of ten hours of unrecorded overtime each week.

> Q: In any given week do you have an estimate as to how much overtime you didn't report?
>
> A: On average, I would say about ten hours a week.
>
> Q: So if I understand this right, if you put in for 20 hours of overtime a week you really worked approximately 30 hours of overtime a week?
>
> A: On average.

opt-in plaintiff, has estimated that he worked two to five off-the-clock overtime hours each week. Hodges Dep. 221:19-24, Sep. 23, 2013. Though their estimates do not include the total number of weeks of overtime worked, the court could determine those numbers through a close reading of the record.

While plaintiffs' estimates are by no means detailed, the court – when drawing all inferences in their favor – finds that they have proven the amount and extent of their alleged overtime work as a matter of just and reasonable inference.

### 2. Whether Plaintiffs Have Proved that Farmers' Suffered or Permitted Plaintiffs' Overtime Work

Farmers contends that summary judgment is appropriate because plaintiffs have failed to meet the second prong of the Davis test. As noted above, plaintiffs seeking to recover under FLSA for off-the-clock overtime work must also prove that their employer "suffered or permitted" the work. Davis, 792 F.2d at 1276. This second prong of the Davis test requires an employee to prove that his or her employer had actual or constructive knowledge of the plaintiff's off-the-clock overtime work. Id. At least one court within this circuit has explained that a plaintiff's unsupported allegations do not

---

   Q: And if you put in for five hours of overtime a week you really worked on average 15 hours of overtime?

   A: On average.

Cantrell Dep. 115:11-22, Apr. 4, 2012. Carnahan testified that she usually worked two hours of unrecorded overtime each day, which amounts to ten hours of overtime each week. Carnahan Dep. 87:13-17, June 26, 2012. MacGregor stated in his deposition that he worked ten to twelve unrecorded overtime hours each week.

   Q: Do you have any estimate of the difference between the hours you actually worked in any given week and the amount of time that you wrote down on your time card?

   A: Typically in ten to twelve hours a week, about two hours a day. All depends if I worked the weekend or did some work on the weekend.

MacGregor Dep. 116:17-24, June 25, 2012.

8

meet the second prong of the test outlined in Davis. Darrikhuma v. Southland Corp., 975 F. Supp. 778, 784 (D. Md. 1997) ("Plaintiff offers no more than his own unsupported allegations that Defendant was actually advised of his working on the job and not being paid for those hours. Thus, Plaintiff has failed to establish that Defendant had constructive or actual knowledge."). Additionally, several other courts have found that employers did not have knowledge of an employee's unrecorded overtime hours where, as here, that employee's work required frequent time out of the office or unpredictable working hours. See, e.g., Wood v. Mid-Am. Mgmt. Corp., 192 F. App'x 378, 380-81 (6th Cir. 2006) (finding that employer reasonably relied on an on-site apartment maintenance technician's reported work hours as an accurate indicator of hours worked); Newton v. City of Henderson, 47 F.3d 746, 749-50 (5th Cir. 1995) (finding that employer reasonably relied on a drug task force police officer's reported work hours as an accurate indicator of hours worked). However, at least one other circuit court has found that summary judgment is inappropriate where, as here, the employee alleges that his managers instructed him to work off-the-clock. Kuebel v. Black & Decker, Inc., 643 F.3d 352, 363-64 (2d Cir. 2011) (summary judgment for employer was inappropriate where business-to-business sales rep alleged that his supervisors told him to never record overtime work on his timesheets); see also Reich v. Dept. of Conservation & Natural Res., 28 F.3d 1076, 1079-81 (11th Cir. 1994) (reversing district court and finding that state agency had actual knowledge that natural resources officers worked off-the-clock overtime because: (1) a study had shown that unreported overtime was widespread; (2) officers frequently complained that they worked unpaid overtime; and (3) many officers' arrest reports were inconsistent with their weekly report of hours worked).

In this case, plaintiffs declare that their supervisors frequently refused to approve the overtime requests that they submitted at the beginning of each calendar week, effectively forcing them to work off-the-clock in order to finish all of their assignments. See, e.g., Cantrell Decl. ¶ 7. Plaintiffs' sworn declarations also state that their requests to amend their time cards to reflect more accurate overtime hours were often denied, further forcing them to work off-the-clock overtime. Id. ¶ 8. In their depositions, plaintiffs admitted that their supervisors approved all overtime requests submitted by plaintiffs, but explained that their supervisors directed them to avoid reporting all of their overtime hours. See, e.g., Carnahan Dep. 87:13-25.

Plaintiffs' evidence that Farmers knew of their off-the-clock overtime work may be somewhat thin. Nevertheless, it is enough to survive summary judgment. The court finds that plaintiffs have, for the moment, sufficiently demonstrated that Farmers suffered or permitted their off-the-clock overtime work.

### B. Whether Plaintiffs Are Exempt from the Act's Overtime Provisions

Finally, Farmers contends that plaintiffs' FLSA claim fails because they are administrative employees who are exempt from the Act's overtime provisions. Plaintiffs respond that cannot be considered exempt employees because Farmers itself classified them as non-exempt employees.

Among the employees exempt from the Act's overtime pay requirement are persons "employed in a bona fide executive, administrative, or professional capacity" ("the administrative exemption"). Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 691 (4th Cir. 2009); 29 C.F.R. § 541.200(a). Employees who qualify for the administrative exemption are those:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a); Desmond, 564 F.3d at 691. The employer bears the burden of demonstrating, by clear and convincing evidence, that its employees fall within the administrative exemption. Desmond, 563 F.3d at 691; Shockley v. City of Newport News, 997 F.2d 18, 21 (4th Cir. 1993) ("Employers must prove by clear and convincing evidence that an employee qualifies for exemption."). "It is well settled that exemptions from the Fair Labor Standards Act are to be narrowly construed." Mitchell v. Kentucky Fin. Co., 359 U.S. 290, 295 (1959).

As an initial matter, the parties agree that plaintiffs were paid salaries that exceeded $455 per week. What remains to be determined is whether plaintiffs meet the second and third prongs of the administrative exemption test. In Farmers' favor, federal labor regulations explain that

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption . . . if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a). Farmers is in the business of writing insurance policies and handling insurance claims. Plaintiffs are white collar workers who examined and settled those claims. This work appears to be directly related to general business operations, which the regulations further define as "work directly related to assisting with the

11

running or servicing of the business." 29 C.F.R. § 541.201(a). Additionally, plaintiffs exercised discretion by conducting many of the activities described in 29 C.F.R. § 541.203. See Pls.' Opp'n 3 ("As property claim representatives employed by Farmers, Plaintiffs handled claims made by insureds on Foremost property policies, inspected newly-insured properties to ensure that the properties are as described by the customer and insurance agent, and handled appraisals for desk adjusters.").

Plaintiffs, on the other hand, provide evidence that Farmers classified its PCRs as non-exempt employees. Plaintiffs have submitted a Farmers-issued job profile for senior PCR lists the job as "non-exempt" under FLSA, Pls.' Opp'n Ex. 18, as well as a memorandum from Farmers' vice president of human resources that was sent to "All Non-Exempt Claims Representatives" on April 10, 2008. Id. Ex. 19. Finally, plaintiffs provide a human resources document dated January 20, 2005 in which Farmers announced that

> Litigation has resulted in a court decision that requires Property Personal Lines Claims Representatives to be classified as non-exempt employees. This change of status impacts Property Adjusters, but does not include Liability Field Claims Adjusters outside of California, Commercial Claims Adjusters or General Adjusters.

Pls.' Opp'n Ex. 10 at 1.

Even if, as Farmers contended at the hearing, the determination of whether plaintiffs are exempt or non-exempt is a legal conclusion for the court, it is a conclusion that the court is unable to draw at this time. As a result of the evidence that Farmers itself classified its PCRs as non-exempt under the FLSA, the court cannot now find that Farmers has shown, by clear and convincing evidence, that plaintiffs qualify for the Act's administrative exemption.

## IV.  CONCLUSION

For all these reasons, the court **DENIES** Farmers' motion for summary judgment on plaintiffs' FLSA claim, ECF No. 126.

**AND IT IS SO ORDERED**.

                                                                       _____
                                                                       **DAVID C. NORTON**
                                                                       **UNITED STATES DISTRICT JUDGE**

**August 20, 2014**
**Charleston, South Carolina**